IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VICTAULIC COMPANY,<br><br>          Plaintiff,<br><br>     v.<br><br>FERGUSON ENTERPRISES, LLC and<br>STEVEN WILSON,<br><br>          Defendants. | **COMPLAINT**<br><br>Case No._____ |

Plaintiff Victaulic Company ("Victaulic"), by and through its undersigned counsel, for its Complaint against Defendants Ferguson Enterprises, LLC ("Ferguson") and Steven Wilson ("Wilson," together with Ferguson, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1. This case arises from Ferguson's calculated campaign to transform itself from one of Victaulic's largest distributors into one of its principal competitors—not by legitimately building a business from the ground up—but rather by targeting Victaulic's workforce and misappropriating its confidential information, unlawfully leveraging the very people, customer relationships, goodwill, and competitive intelligence that Victaulic spent decades developing.

2. For years, Victaulic and Ferguson mutually benefitted from a productive manufacturer-distributor relationship that, at its height, generated hundreds of millions of dollars in annual product sales. Through that relationship, Ferguson gained a unique understanding of Victaulic's business, including the value of key members of Victaulic's highly-trained sales force.

3. The parties' commercial relationship deteriorated in late 2025 because of Ferguson's continual promotion of competing products. Even before the end of the relationship, Ferguson began to build a competing operation promoting competing product lines, steering

customers away from Victaulic products, and recruiting key Victaulic personnel with intimate knowledge of Victaulic's customers, projects, pricing, sales methods, and confidential business information, to make that all achievable. Ferguson's above-market level compensation packages offered to key Victaulic sales personnel underscore the extraordinary lengths Ferguson has been willing to go to misappropriate Victaulic's business.

4.      Ferguson's recent recruitment of Wilson—a very successful Victaulic salesperson, bound by an 18-month non-competition covenant—represents the latest development in Ferguson's campaign, demonstrating Ferguson's willingness to disregard valid contractual restrictions in order to unfairly compete against Victaulic.

5.      Ferguson hired Wilson specifically because of his intimate knowledge of Victaulic's customers, ongoing projects, distributors, engineers, contractors, pricing, and sales strategies—all of which make him invaluable to Ferguson's effort to strengthen its competition with Victaulic.

6.      Ferguson knew full well that Wilson was bound by restrictive covenants in favor of Victaulic, including non-competition and non-solicitation provisions, all as set forth in his May 24, 2023 Confidentiality, Non-Disclosure, Non-Competition, Intellectual Property Agreement (the "Non-Compete Agreement"). *See* Exhibit A.

7.      Yet, despite that knowledge, Ferguson gave Wilson a 40% increase in base compensation and hired him into a position that will inevitably require him to violate his contractual obligations to Victaulic, including in particular the restriction prohibiting Wilson from joining a direct competitor for eighteen months after his departure from Victaulic.

8.      Then, rather than agree to withdraw Wilson from such competitive employment for eighteen months in response to Victaulic's cease-and-desist letters, Ferguson attempted to engineer

a way around the restrictive covenants, by proposing six-months of initial temporary warehouse work, coupled with geographic and customer limitations Wilson would supposedly abide by, and confidentiality instructions. Ferguson also revised its description of Wilson's title – from NUPI Specialist (selling a specific kind of thermoplastic technology that competes directly with Victaulic's mechanical pipe-joining product offerings) to Commercial PVF Project Manager (worse yet, now selling an even broader array of pipe, valve and fitting solutions that directly compete with Victaulic's product offerings)—all while insisting that Wilson's continuing employment at Ferguson will still proceed.

9.      Victaulic now brings this action, seeking money damages (i) against Ferguson for tortiously interfering with Wilson's Non-Compete Agreement with Victaulic, and engaging in unfair competition, and (ii) against Wilson for breach of contract. Victaulic also seeks declaratory relief against both Defendants that: (i) the Non-Compete Agreement is valid and enforceable as written; (ii) Wilson's employment with Ferguson, as his role has been described by Ferguson itself, during the eighteen-month restricted period, violates that Non-Compete Agreement; (iii) Ferguson's continued employment of Wilson during the eighteen-month restricted period tortiously interferes with Victaulic's contractual rights; and (iv) the Non-Compete Agreement remains in effect, and shall be tolled during the period of Wilson's breach.

10.     In connection with such declaratory relief, Victaulic also seeks preliminary and permanent injunctive relief: (i) enjoining Wilson from breaching his obligations contained in the Non-Compete Agreement; (ii) enjoining Wilson from working for Ferguson or any competing business in violation of the Non-Compete Agreement for the entirety of the eighteen-month restricted period; (iii) enjoining Ferguson from employing Wilson in violation of the Non-Compete Agreement; and (iv) enjoining Ferguson from tortiously interfering with Wilson's Non-Compete

Agreement and with any other Victaulic employees' non-compete agreements with Victaulic.

## PARTIES, JURISDICTION AND VENUE

11.     Victaulic is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 4901 Kesslersville Road, Easton, Northampton County, Pennsylvania 18040.

12.     Ferguson is, upon information and belief, a limited liability company organized and existing under the laws of the State of Virginia, with a principal place of business at 751 Lakefront Commons, Newport News, VA 23606, and with offices in many parts of the country, including multiple offices in Pennsylvania. Upon information and belief, Ferguson's sole member is Ferguson US Holdings, Inc., a corporation organized and existing under the laws of the State of Virginia, with a principal place of business also at 751 Lakefront Commons, Newport News, VA 23606.

13.     Upon information and belief, at all relevant times Wilson was and currently remains a citizen of and resident of the State of Florida. Wilson was employed by Victaulic as a Sales Representative in Florida for nearly three years, from June 26, 2023 until June 19, 2026. Upon information and belief, on or about June 10, 2026, Wilson was hired by Ferguson and after training, on or about January 1, 2027, will begin working for Ferguson in Florida as a Commercial PVF Project Manager.

14.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Wilson because he expressly consented to personal jurisdiction in the United States District Court for the Eastern District of Pennsylvania

in the Non-Compete Agreement. *See* Ex. A § 7. Specifically, in the Non-Compete Agreement, Wilson agreed that "all matters and disputes related directly or indirectly" to the Non-Compete Agreement "shall be governed, construed and determined in accordance with the laws of the Commonwealth of Pennsylvania," with Wilson "consent[ing] to jurisdiction in the Commonwealth of Pennsylvania, and venue, at Victaulic's option, in the United States District Court for the Eastern District of Pennsylvania." Wilson "waive[d] any rights [he] may have to litigate in any [other] venue," and "consent[ed] to the personal jurisdiction of . . . the United States District Court for the Eastern District of Pennsylvania." *Id.*

16.     This Court has personal jurisdiction over Ferguson because Ferguson regularly conducts substantial business in Pennsylvania, maintains multiple business locations within the State of Pennsylvania, markets and distributes products throughout Pennsylvania, derives substantial revenue from its Pennsylvania operations, and has purposefully availed itself of the privilege of conducting business within Pennsylvania. Ferguson has also committed tortious acts causing injury to Victaulic in Pennsylvania, including tortiously interfering with Wilson's contractual obligations owed to Victaulic and intentionally targeting Victaulic's confidential information, customer relationships, goodwill, and business interests centered in Pennsylvania. Ferguson knew its conduct would cause—and has caused—injury to Victaulic in Pennsylvania.

17.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred within this judicial district. As set forth above, venue is also proper as to Wilson pursuant to his consent in the Non-Compete Agreement. *See* Ex. A §7.

## FACTUAL ALLEGATIONS

**A.    Victaulic's Business**

18.    Formed in 1919, Victaulic is the global leader in the development, manufacture and sale of mechanical pipe-joining solutions, including grooved couplings, fittings, valves, and related components, for commercial, industrial and fire protection piping systems

19.    Victaulic's success is driven not only by its innovation and proprietary products and technologies, but also by the extensive training, technical education, and professional development it provides to its employees. Victaulic invests substantial resources to recruit, train, and develop its sales, engineering, and technical personnel, so that they acquire the specialized knowledge of Victaulic's products, installation methods, engineering standards, pricing strategies, sales processes, customer requirements, and competitive positioning. This training occurs through formal instruction, field experience, mentorship, technical certification programs, and close collaboration with Victaulic's engineering, product management, and commercial leadership.

20.    The knowledge and expertise developed through this investment are critical to Victaulic's competitive advantage. Victaulic personnel are expected to serve as trusted advisors to contractors, engineers, distributors, and other industry participants, providing sophisticated technical guidance regarding complex piping systems, product selection, system design, installation practices, and project execution.

21.    Developing employees who are capable of performing these functions requires the investment of significant time and expense. Such employees cannot be readily replaced.

22.    Victaulic also entrusts its employees with detailed confidential business information that is not publicly available, including customer preferences, purchasing histories, project timetables, pricing and discounting methodologies, strategic business plans, sales forecasts,

competitive analyses, distributor relationships, and other commercially sensitive information. Employees obtain this information only because of their positions with Victaulic and are contractually obligated to maintain its confidentiality and to use it solely for Victaulic's benefit.

23. Because of these investments, experienced Victaulic employees possess a unique combination of technical expertise, customer goodwill, and proprietary business knowledge that provides substantial competitive value.

**B. Wilson Joins Victaulic and is Provided Access to Victaulic Confidential Information**

24. On June 26, 2023, Wilson was hired by Victaulic as a Sales Representative. In that role, Wilson's responsibilities included working with mechanical contractors and engineers, some of whom had nationwide influence and presence, on system design and product selection, promoting Victaulic piping systems and products, supporting complex projects from design through installation, and working closely with product distributors nationwide.

25. Although Wilson's nominal sales territory was South Florida, his responsibilities were hardly confined to only local accounts. To the contrary, over the three-year course of his employment, Wilson routinely worked with contractors, engineers, distributors, and other customers whose operations, decision-makers, and projects spanned the Southeast, and in some cases, nationwide—well beyond his South Florida base.

26. Through these relationships, Wilson developed a deep knowledge of customers' purchasing practices, project pipelines, decision-making processes, pricing expectations, and strategic business needs—across multiple markets. Victaulic entrusted Wilson with this information so that he could cultivate and expand customer relationships on Victaulic's behalf.

27. As an express condition of his employment with Victaulic, on May 24, 2023, Wilson executed the Non-Compete Agreement.

28. Pursuant to the Non-Compete Agreement, and specifically "[i]n order to protect Victaulic's legitimate interests, including its confidential information, . . . customer relationships and goodwill, including goodwill acquired through [his] efforts while employed by Victaulic, and of the specialized training and confidential knowledge acquired by [him] during [his] employment concerning Victaulic's products, services, customers and sales strategies" (*see* Ex. A § 6), Wilson agreed, *inter alia*, to the confidentiality, non-competition and non-solicitation obligations set forth below, both during and after his employment at Victaulic.

29. *First*, Wilson "acknowledge[d] Victaulic's legitimate business interest in maintaining the secret character of its confidential and proprietary information, including trade secrets (collectively, 'Confidential Information'), that this information is of significant competitive and commercial value to Victaulic, and that Victaulic's disclosure of Confidential Information to [him] is in reliance on [his] obligations under this Agreement." *See* Ex. A § 2.

30. *Second*, Wilson agreed "to keep such Confidential Information strictly confidential and that [he] will not, either during [his] employment with Victaulic or at any time thereafter, disclose to anyone, publish (including via social media) or use (except as authorized in the regular course of Victaulic 's business), any such Confidential Information acquired by [him] during [his] employment." *Id*.

31. Victaulic's Confidential Information is, in turn, defined to include:

> [F]inancial and business information; sales, profits, margins, marketing and advertising programs; business research, objectives, strategies and action or acquisition plans; new products, services and product development activities; the status of regulatory approvals; … sales information; sales goals, sales activity, products, services, pricing, customers, prospects; customer and vendor information; the names and addresses of customers and customer contacts; . . . [and] terms of Victaulic's dealings with customers; discounts, pricing, costs and project information; identity of vendors and other sources.

Ex. A § 2.

32.    *Third*, Wilson agreed in the Non-Compete Agreement that, during his employment at Victaulic and for eighteen months following termination of his employment, he would not, "within the United States . . . become an employee, consultant or independent contractor of or for any business in competition with Victaulic" or "become an employee, consultant or independent contractor of or for any business in which [he] will be calling on the same customers in the same territory as [he] called upon during [his] employment at Victaulic." Ex. A § 6(b)(i), (iii).

33.    *Fourth*, Wilson agreed that, during his employment at Victaulic and for eighteen months following termination of his employment, he would not "contact, service or solicit on behalf of any business in competition with Victaulic any of Victaulic's customers whose existence [he] learned of through [his] employment with Victaulic," with customers defined to include "distributors, owners, architects, engineers, and contractors, regardless of whether or not they purchase Victaulic's products or services." *See* Ex. A § 6(c)(i).

34.    Wilson further agreed that these restrictions would not prevent him from "gainful employment" nor prevent him from "earning a livelihood," and that in the event of a breach of the Non-Compete or Non-Solicit, "the eighteen (18) month restriction periods specified will be tolled during the time of such breach or violation and shall not begin to run until such breach or violation has been fully and finally cured either voluntarily by [him], by agreement, or by order of any court having competent jurisdiction." *See* Ex. A §6 (d)-(e).

35.    The Non-Compete Agreement also provided that a breach of the above restrictions "would injure Victaulic irreparably in a way that could not be adequately compensated for by damages," and that Victaulic could, therefore, enforce them specifically by injunction without the need to post any bond or other security. *See* Ex. A § 8.

**C.    When Victaulic's Relationship with Ferguson Deteriorates, Ferguson Implements a Strategy to Build a Competing Operation on the Backs of Former Victaulic Personnel**

36.    Ferguson touts itself as North America's largest distributor of plumbing, PVF (pipe, valves, fittings), HVAC, fire protection, and industrial products. Ferguson is a multi-line distributor, carrying products from manufacturers across the spectrum of plumbing, mechanical, industrial, and fire-protection industries, and reselling them to contractors, commercial customers, municipalities, and industrial users.

37.    More specifically, Ferguson sells products and technologies that directly compete with Victaulic's mechanical pipe-joining system, such as: Gruvlok/ASC (grooved mechanical systems), NUPI and Aquatherm (PP-R thermoplastic systems), and stainless steel press-fit systems.

38.    Although these systems employ different technologies, they frequently compete against one another for the same projects, because each offers a sophisticated and engineered solution for transporting water and other fluids within a building or industrial facility.

39.    For years, Ferguson was one of Victaulic's biggest distributors, purchasing hundreds of millions of dollars in products annually at the height of the parties' relationship.

40.    In 2025, however, the parties' commercial relationship deteriorated because of Ferguson's promotion of competing products and ultimately concluded.

41.    Following that deterioration, Victaulic has been able to maintain its market share, but, upon information and belief, Ferguson's market share has declined.

42.    To thereafter compete directly against Victaulic and in attempt to recover market share, Ferguson sought to hire Victaulic employees who already possessed detailed knowledge of the market, customer relationships, and project opportunities—knowledge that would otherwise

require years to develop independently. Rather than build that expertise organically, Ferguson has begun recruiting experienced Victaulic personnel who had already developed those relationships while employed by Victaulic.

### D. Wilson Joins Ferguson, for the Express Purpose of Selling Products That Directly Compete with Victaulic

43. On June 11, 2026, Wilson provided two weeks' resignation notice to Victaulic and informed his supervisors that he was joining Ferguson as a NUPI Specialist (*i.e.,* selling NUPI's nonmetallic piping products), with an anticipated start date of July 1, 2026.

44. Upon information and belief, Wilson's start date at Ferguson was then pushed back to July 8, 2026.

45. In resigning from Victaulic, Wilson told his supervisors that Ferguson was aware of Wilson's restrictions in the Non-Compete Agreement. Wilson also advised his Victaulic supervisors that one of his main roles at Ferguson would be converting Chilled Water & Condenser Water Systems to NUPI, *i.e.*, converting potential Victaulic customers to Ferguson NUPI customers.

46. Ferguson plainly hired Wilson because he had spent years developing relationships with the very Victaulic customers, contractors, distributors, engineers, and project decisionmakers that Ferguson now seeks to influence in favor of Ferguson's competing products. Ferguson intentionally targeted Wilson specifically because of his knowledge acquired at Victaulic.

47. Ferguson tortiously interfered with Victaulic's contractual rights as part of a broader competitive strategy to capture for itself Victaulic's substantial investment in developing its sales organization and customer goodwill, rather than incurring the time and significant expense of developing comparable capabilities independently.

48.    Wilson's hire is representative of this broader strategy and serves as one of Ferguson's key hires in implementing it.

49.    Upon information and belief, Ferguson induced Wilson to leave Victaulic by offering him a dramatic increase in compensation, including an approximately 40% increase in his base salary. Ferguson's willingness to pay such a substantial premium for Wilson's services reflects the strategic value Ferguson placed on acquiring a key Victaulic employee with established customer relationships, technical expertise, and knowledge of Victaulic's business, rather than competing fairly in the marketplace.

50.    Immediately before his departure from Victaulic, Wilson intentionally erased all data from his Victaulic-issued mobile phone by restoring the device to its factory settings. As a result, the phone's contents were permanently deleted before Victaulic could recover, preserve or review them.

**E.    Ferguson Acknowledges Wilson's Restrictions, and Confirms Wilson's Role Would Directly Compete with Victaulic, But Refuses to Abandon His Employment**

51.    After learning that Wilson had been hired by Ferguson, and intended to commence employment with Ferguson in the near term as a NUPI Specialist working in a geographic territory that overlapped with the territory in which Wilson made sales calls during his employment by Victaulic, on June 17, 2026 Victaulic sent Ferguson and Wilson both cease-and-desist letters. *See* Exhibit B.

52.    In those letters, Victaulic informed Defendants that it deemed Wilson's prospective employment by Ferguson as a NUPI Specialist during the eighteen-month period following his separation from Victaulic a direct violation of Wilson's Non-Compete Agreement. *See id.*

Victaulic demanded that Wilson immediately cease all plans to commence employment with Ferguson until after the eighteen-month restricted period had elapsed.

53.     On June 23, 2026, Ferguson responded, s*ee* Exhibit C, acknowledging that Wilson remained subject to post-employment obligations owed to Victaulic, and representing that it was attempting to restructure his role around those restrictions. But Ferguson also made clear its intent to move forward with employing Wilson regardless.

54.     Ferguson represented that Wilson would work initially in a warehouse, would never service the South Florida market (for 18 months), would not solicit Victaulic customers, and would not use Victaulic confidential information—all concessions that reflect Ferguson's own recognition that Wilson's employment presented substantial competitive risks. Ferguson also represented that Wilson's role with Ferguson would not be as a NUPI Specialist, but rather as a Commercial PVF Project Manager.

55.     On July 1, 2026, Victaulic responded. *See* Exhibit D. In its response letter, Victaulic explained that the re-designation of Wilson's role as a "Commercial PVF Project Manager" in fact positioned Wilson as even more directly competitive with Victaulic's business than the originally contemplated NUPI Specialist position and, thus, more squarely in violation of the Non-Compete. Indeed, PVF— an industry abbreviation for pipes, valves, and fittings—are the very product categories in which Victaulic competes, and in which Ferguson had been its distributor.

56.     Ferguson's June 23 letter, thus, confirmed that Wilson was being placed in a position that would allow him to steer new customers away from Victaulic's mechanical piping system towards a Gruvlok mechanical grooved piping system, a NUPI or Aquatherm thermoplastic piping system, a stainless steel press-fit system, among others.

57.     Victaulic also explained why Ferguson's intention to place Wilson in training for the first six to eight months of his employment did not alleviate Victaulic's concerns, because Ferguson had provided no indication of Wilson's role after the initial training period—i.e., for the remaining ten to twelve months of Wilson's restricted period—and the obvious inference was that he would be transitioning into a sales or customer-facing capacity within the PVF product line.

58.     Victaulic also highlighted the paradox with respect to Ferguson's representation it would not solicit Victaulic's customers: identifying which contractors, engineers, distributors, owners and customers would be off-limits necessarily required Wilson to share with Ferguson the very same confidential customer knowledge he acquired at Victaulic. Indeed, Ferguson could not implement its proposed restrictions without securing from Wilson, and then relying upon, Victaulic's own confidential information.

59.     Ferguson responded via email on July 10, 2026, producing a partial job description for Wilson's role as Commercial PVF Project Manager and reiterating that Wilson would be sequestered from South Florida. *See* Exhibit E. But that partial job description actually confirmed that, after his initial training period, Wilson's position would be customer-facing and directly competitive:

| Job Description | This position will manage large, complex Pipe, Valves & Fittings projects from start to finish. |
| --- | --- |

Primary Responsibilities

- Manage all aspects of a project, from start to finish, so that it is completed on time and within budget
- Maintain project pricing
- Act as the point of contact for the customers and for the project overall providing best in class customer service
- Recommend products and services that fit well with clients' business needs
- Identify, develop, and gather the resources to complete the project
- Establish and maintain effective sales relationships with major accounts/customers
- Monitor progress and performance against the project plan; resolve operational problems and minimize delays
- Work directly with partners and clients to determine project scope, specifications, requirements, and perform calculations
- Conduct project meetings and prepare regular reports to communicate the status of the project within and beyond the project team
- Responsible for procuring and ensuring the timely delivery of supplies, materials, and equipment
- Ensure accurate billing of the project

60.     These specific responsibilities, in fact, mirror the functions Wilson performed for Victaulic and are, by Ferguson's own description, a competitive sales and customer-relationship

position for products that directly compete with Victaulic's offerings.

61.     For instance, by "maintain[ing] project pricing" and "recommend[ing] products and services that fit well within clients' business needs," Wilson would necessarily be leveraging his knowledge and experience with Victaulic project pricing strategies when recommending and managing competitive pricing for alternative products (such as Gruvlok, NUPI, Aquatherm, or other product lines) that Ferguson distributes. Moreover, by "establish[ing] and maintain[ing] effective sales relationships with major accounts/customers" and "work[ing] directly with partners and clients to determine project scope, specifications, requirements, and perform calculations," Wilson would be interacting with Victaulic customers and partners in direct competition with Victaulic.

62.     Victaulic also explained that Ferguson's "not South Florida" restriction did nothing to address Victaulic's concerns, because engineering firms specify nationally; South Florida contractors work throughout the Southeast; customer relationships transcend territories; project pricing knowledge travels with Wilson; and the regional accounts Wilson hired, were not geographically confined.

63.     Indeed, while employed by Victaulic, Wilson developed close relationships with regional and national customers, suppliers, vendors, engineers, and contractors whose operations and influence reached well beyond South Florida.

64.     Victaulic made the above points in its response letter to Ferguson, dated July 14, 2026, reiterating that Wilson's announced role as Commercial PVF Project Manager would clearly violate the Non-Compete Agreement. *See* Exhibit F.

65.     As of the date of this filing, Victaulic has not received any response to its July 14

correspondence,[1] and, upon information and belief, Wilson remains employed by Ferguson.

66.     This action now follows.

### FIRST CAUSE OF ACTION
*Tortious Interference with Contract*
*(Against Ferguson)*

67.     Victaulic repeats and realleges the preceding paragraphs as though fully set forth herein.

68.     Wilson's Non-Compete Agreement with Victaulic is a valid and fully enforceable contract.

69.     Ferguson had full knowledge of the existence of the Non-Compete Agreement between Victaulic and Wilson, including his confidentiality, non-competition and non-solicitation restrictions therein, at or about the time it hired Wilson.

70.     In providing his two weeks' resignation notice to Victaulic, Wilson indicated that Ferguson had knowledge of the Non-Compete Agreement, and Ferguson admitted as much when responding to Victaulic's cease-and-desist letters.

71.     By June 17, 2026, at the latest, Ferguson also had direct knowledge of Wilson's breach of his Non-Compete Agreement, when Ferguson received a cease-and-desist letter from Victaulic.

72.     Ferguson then attempted to find a way around the restrictive covenants by proposing temporary warehouse work, geographic limitations, customer limitations, and confidentiality instructions. These proposed accommodations demonstrate Ferguson understood full well that Wilson's employment implicated the Non-Compete Agreement.

---

[1] To date, Victaulic has not received any response from Wilson to its June 17, 2026 cease-and-desist letter. Despite numerous requests (*see* Exs. D, F), counsel for Ferguson has refused to acknowledge whether it also represents Wilson.

73. Despite knowledge of the Non-Compete Agreement and Wilson's obligations to Victaulic thereunder, Ferguson tortiously interfered with them by hiring Wilson and placing him in roles that will directly compete with Victaulic.

74. Ferguson's acts were intentional and conducted with the purpose of interfering with Victaulic's Non-Compete Agreement with Wilson.

75. Ferguson intentionally induced and continues to facilitate Wilson's breach of the Non-Compete Agreement by employing him in a competing role.

76. Ferguson's improper actions in inducing Wilson to breach the Non-Compete Agreement were undertaken in the absence of privilege and with no justification.

77. As a direct and proximate result of Ferguson's tortious interference, Victaulic has been, and is still being, damaged in an amount in excess of $75,000 to be determined at trial.

78. Ferguson has acted in an egregious, malicious, willful and wanton manner, and in bad faith when committing the acts alleged above. As a result, Victaulic is also entitled to recover punitive damages against Ferguson.

79. Ferguson's tortious interference with Victaulic's contractual relationship with Wilson is ongoing and threatens to continue absent judicial intervention. Ferguson knowingly induced Wilson to disregard his valid contractual obligations to Victaulic and continues to benefit from that misconduct by employing him in a role that necessarily exploits the customer relationships, confidential information, and competitive advantages he developed while employed by Victaulic.

80. Unless enjoined, Ferguson will continue to interfere with Victaulic's contractual rights, causing irreparable harm through the loss of customer goodwill, erosion of competitive advantages, disclosure and use of confidential and proprietary information, and the diversion of

business opportunities—injuries that cannot be fully remedied by an award of monetary damages.

79. Victaulic has no adequate remedy at law.

80. Victaulic is therefore entitled to damages and to injunctive relief prohibiting Ferguson from further interfering with Victaulic's contractual rights, including by employing or otherwise utilizing Wilson in violation of his enforceable contractual obligations.

## SECOND CAUSE OF ACTION
### *Unfair Competition*
### *(Against Ferguson)*

81. Victaulic repeats and realleges the preceding paragraphs as though fully set forth herein.

82. Victaulic invested considerable time, energy and resources to train its salespeople, including Wilson.

83. Ferguson intentionally recruited Wilson as part of a broader effort to impermissibly accelerate its competitive expansion by exploiting Victaulic's own investment in developing its workforce, customer relationships, confidential business information, and market knowledge.

84. Rather than compete properly, through independent investment and innovation, Ferguson sought to misappropriate Victaulic's competitive advantages by recruiting Victaulic personnel subject to continuing contractual obligations and deploying them to advance Ferguson's competing product offerings. Such conduct constitutes unfair competition.

85. The calculated effort by Ferguson to undermine Victaulic has put Victaulic unfairly at a competitive disadvantage.

86. The foregoing acts of Ferguson have irreparably injured, and unless enjoined will continue to injure, Victaulic, by depriving it of sales of its services, and by injuring its business reputation.

87. As a direct and proximate result of Ferguson's unfair competition, Victaulic has

been, and is still being, damaged in an amount in excess of $75,000 to be determined at trial.

88.    Ferguson has acted in an egregious, malicious, willful and wanton manner, and in bad faith when committing the acts alleged above. As a result, Victaulic is also entitled to punitive damages against Ferguson.

89.    Ferguson's misconduct is not limited to the hiring of a single employee, but, upon information and belief, reflects a broader strategy to build and expand competing piping-system operations by appropriating the fruits of Victaulic's substantial investments in its workforce and proprietary business information.

90.    As a direct and proximate result of Ferguson's unfair competition, Victaulic has suffered and will continue to suffer irreparable harm, including the loss of customer goodwill, erosion of competitive advantages, disclosure and use of confidential and proprietary information, and the diversion of business opportunities—injuries that cannot be fully remedied by an award of monetary damages.

91.    Victaulic has no adequate remedy at law.

92.    Victaulic is therefore entitled to injunctive relief enjoining Ferguson from continuing its unfair and unlawful competitive practices.

### THIRD CAUSE OF ACTION
*Breach of Contract*
*(Against Wilson)*

93.    Victaulic repeats and realleges the preceding paragraphs as though fully set forth herein.

94.    As a condition of his employment with Victaulic, Wilson entered into the Non-Compete Agreement, pursuant to which he agreed, *inter alia*, that, during his employment at Victaulic and for eighteen months following termination of his employment, he would not "within the United States . . . become an employee, consultant or independent contractor of or for any

business in competition with Victaulic" or "become an employee, consultant or independent contractor of or for any business in which [he] will be calling on the same customers in the same territory as [he] called upon during [his] employment at Victaulic." Ex. A § 6(b)(i), (iii).

95. The Non-Compete Agreement is a valid and fully enforceable contract.

96. Wilson materially breached the Non-Compete Agreement by accepting and maintaining employment with a competing business, Ferguson, within eighteen months following termination of his employment with Victaulic with the responsibilities described herein.

97. Victaulic has performed all conditions, covenants, and promises required by the terms and conditions of the Non-Compete Agreement.

98. As a direct and proximate result of Wilson's breach of the Non-Compete Agreement, Victaulic has been, and is still being, damaged in an amount in excess of $75,000 to be determined at trial.

99. Victaulic is also entitled to injunctive relief enjoining Wilson's further breaches of the Non-Compete Agreement. As a direct and proximate result of Wilson's breaches of the Non-Compete Agreement, Victaulic has suffered and will continue to suffer irreparable harm, including the loss of customer goodwill, erosion of competitive advantages, disclosure and use of confidential and proprietary information, and the diversion of business opportunities—injuries that cannot be fully remedied by an award of monetary damages.

100. Victaulic has no adequate remedy at law.

101. Victaulic is therefore entitled to injunctive relief enjoining Wilson from continuing to breach the Non-Compete Agreement.

**FOURTH CAUSE OF ACTION**
*Declaratory Judgment*
*(Against Ferguson and Wilson)*

102.  Victaulic repeats and realleges the preceding paragraphs as though fully set forth herein.

103.  An actual, present, and justiciable controversy exists between Victaulic and Defendants concerning the validity, enforceability, scope, and continuing effect of the Non-Compete Agreement.

104.  Defendants contend, expressly or implicitly, that Wilson's employment with Ferguson does not violate the Non-Compete Agreement and that the restrictions therein are unenforceable or otherwise inapplicable as sought by Victaulic to be applied here.

105.  Victaulic contends that the Non-Compete Agreement constitutes a valid and enforceable contract and that Wilson's employment with Ferguson, as his position has been described by Ferguson itself, violates the Non-Compete Agreement.

106.  Victaulic further contends that, pursuant to the Non-Compete Agreement's tolling provision, the eighteen-month restricted period is tolled during any period in which Wilson remains in breach.

107.  Pursuant to 28 U.S.C. §§ 2201 and 2202, Victaulic seeks a declaration that:

A.  The Non-Compete Agreement is valid and enforceable;

B.  Wilson's employment with Ferguson, as his role has been described by Ferguson itself, violates the Non-Compete Agreement;

C.  Ferguson's continued employment of Wilson knowingly interferes with Victaulic's contractual rights; and

D.  The Non-Compete Agreement remains in effect and is tolled during the period of Wilson's breach.

**PRAYER FOR RELIEF**

WHEREFORE, Victaulic respectfully requests that the Court enter judgment in favor of Victaulic and against Defendants, awarding Victaulic:

A. Declaratory relief against both Defendants holding that:

    i.    The Non-Compete Agreement is valid and enforceable;

    ii.    Wilson's employment with Ferguson during the eighteen-month restricted period violates the Non-Compete Agreement;

    iii.    Ferguson's continued employment of Wilson during the eighteen-month restricted period knowingly interferes with Victaulic's contractual rights; and

    iv.    The Non-Compete Agreement remains in effect and is tolled during the period of Wilson's breach.

B. Preliminary and Permanent injunctive relief:

    i.    Enjoining Wilson from breaching his obligations contained in the Non-Compete Agreement;

    ii.    Enjoining Wilson from working for Ferguson or any competing business in violation of the Non-Compete Agreement for the referenced eighteen-month restricted period;

    iii.    Enjoining Ferguson from employing Wilson in violation of the Non-Compete Agreement; and

    iv.    Enjoining Ferguson from tortiously interfering with Wilson's Non-Compete Agreement and with any other Victaulic employees' non-compete agreements with Victaulic.

- 22 -

C. Compensatory damages against Defendants in an amount to be determined at trial;

D. Punitive damages against Defendants in an amount to be determined at trial;

E. Attorneys' fees and costs;

F. Pre- and post- judgment interest; and

G. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: August 5, 2026

PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Matthew D. Stockwell*
Kenneth W. Taber
Brian L. Beckerman
Matthew D. Stockwell (ID No. 310796)
31 West 52nd Street
New York, NY 10019-6131
Tel: 212.858.1000
Fax: 212.858.1500
kenneth.taber@pillsburylaw.com
brian.beckerman@pillsburylaw.com
matthew.stockwell@pillsburylaw.com

*Attorneys for Plaintiff Victaulic Company*

# EXHIBIT A



# CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT: GENERAL SALARIED EMPLOYEES

**This Confidentiality, Non-Disclosure, Non-Competition and Intellectual Property Assignment Agreement** ("Agreement") is entered into by and between Victaulic Company, a New Jersey Corporation, or any of its predecessors, successors, assigns, affiliates, or subsidiary companies ("Victaulic")  and <u>Steven Wilson</u>, and is deemed effective as of the date of signature.  In consideration of "at will" employment by Victaulic and of other good and valuable consideration, and intending to be legally bound, I make the following representations and agree to the following terms:

1. <u>Representations by Employee</u>:

   a) <u>Employment Not Restricted</u>. I represent that I am not a party to any contract or involved in any form of legal action which prohibits my employment by Victaulic, including any employment agreement, confidentiality agreement, covenant not to compete, or any other restrictive agreement or covenant.  In the event that any former employer brings a lawsuit or other action against me for alleged breach of contract, I acknowledge that Victaulic is not responsible to indemnify or defend me in any such lawsuit or legal action.

   b) <u>Non-Disclosure of Trade Secrets</u>. I further represent that I have not disclosed, nor has Victaulic requested me to disclose or use, any trade secrets of any former employer. I agree that I will not disclose or use any trade secrets of any former employer during my employment by Victaulic and that I will rely only upon my general knowledge and other non-proprietary information and knowledge to perform my job duties for Victaulic.

2. <u>Confidentiality of Information</u>. I acknowledge Victaulic's legitimate business interest in maintaining the secret character of its confidential and proprietary information, including trade secrets (collectively, "Confidential Information"), that this information is of significant competitive and commercial value to Victaulic, and that Victaulic's disclosure of Confidential Information to me is in reliance on my obligations under this Agreement. I understand that I will have access to and/or will be provided such Confidential Information. I agree to keep such Confidential Information strictly confidential and that I will not, either during my employment with Victaulic or at any time thereafter, disclose to anyone, publish (including via social media) or use (except as authorized in the regular course of Victaulic 's business), any such Confidential Information acquired by me during my employment. Such Confidential Information includes any non-public, confidential or secret aspect of the business, which includes but is not limited to:

   (a) trade secrets or confidential information relating to any of Victaulic's products or services (including Virtual Design and Construction services) or to any product or service that Victaulic may have under development at any time during my employment;

   (b) engineering, technical and manufacturing information; drawings, designs, specifications, and tolerances; engineering procedures, instructions and methods; manufacturing methods, processes and techniques; any confidential or secret process, design, formula or invention; the yields, designs, efficiencies, and capabilities of Victaulic's facilities;

V-09.2017                                                        1 of 6



### CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT: GENERAL SALARIED EMPLOYEES

(c) the status of Victaulic's research, testing, approvals and development activities, activities performed on a confidential basis with third parties, including whether those activities have proven successful or unsuccessful; information disclosed to Victaulic under obligation of confidentiality;

(d) financial and business information; sales, profits, margins, marketing and advertising programs; business research, objectives, strategies and action or acquisition plans; new products, services and product development activities; the status of regulatory approvals;

(e) sales information; sales goals, sales activity, products, services, pricing, customers, prospects; customer and vendor information; the names and addresses of customers and customer contacts,

(f) terms of Victaulic's dealings with customers; discounts, pricing, costs and project information; identity of vendors and other sources;

(g) confidential employee information such as salary, wage, medical and benefit information; employment levels for sites or organizations; employee lists and candidates.

I understand that the above list is not exhaustive, and also includes any such information developed by me during my employment with Victaulic.

3. Exceptions to Confidentiality; Immunity.

a) I understand that Section 2 does not in any way purport to restrict or impede my discussion of the terms and conditions of my employment with coworkers or union representatives, or of exercising rights protected by Section 7 of the National Labor Relations Act.

b) I understand that neither Section 2 nor any other provision of this agreement prohibits me from disclosing Victaulic confidential information, including trade secrets, when that disclosure is: (A) made (i) in confidence to Federal, State, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating suspected violations of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Provided that such disclosure is made in compliance with 18 U.S.C. 1833 (b), such disclosures may be made without criminal or civil liability under Federal or State trade secret laws. I understand that further information about this immunity may be found in Victaulic's Trade Secret Guidelines.

4. Intellectual Property, Other Rights:

a) Inventions and Assignment. I agree that the activities I engage in at Victaulic's direction during the course of my employment are for the sole benefit of Victaulic. I acknowledge and agree that during the course of my employment, and for a period of twelve (12) months immediately following the date of any termination of such employment (regardless of the reason for the termination and regardless of whether the termination is voluntary or involuntary on my part) I may invent, conceive, discover, develop or author useful and valuable intellectual property, including, but not limited to: inventions, ideas, techniques, developments, processes, compounds, formulations, software (including source and object code), textual and graphical reports and analyses,



*CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT:*
*GENERAL SALARIED EMPLOYEES*

photographs and other graphical or audiovisual works, and all other information in any data or media format whether or not patentable, trademarkable, copyrightable or otherwise legally protectable (collectively the "IP"). I agree that any such IP relating to or arising out of my work for Victaulic; within the existing or contemplated scope of Victaulic's business; or created while using Victaulic equipment, supplies, or information; whether made or conceived by me alone or in conjunction with others from the time of my hire date through the entire period of my employment as well as during the twelve (12) months immediately following the date of any termination of such employment, are the sole and exclusive property of Victaulic, and I hereby assign to Victaulic all my right, title and interest in and to such IP to Victaulic. To the extent that any such IP consists of copyrightable subject matter, I further agree that such IP is "work made for hire" as defined in the Copyright Act 17 U.S.C. §201(b) by reason of my employment at the time of authorship, that all copyrights in such IP are owned by Victaulic, and that Victaulic shall be considered the author for all purposes. I further expressly waive any other rights, including moral rights such as the rights of attribution and integrity, in or to such IP.

b) <u>Disclosure and Assistance</u>. I further agree to fully disclose any and all inventions made or conceived by me alone or in conjunction with others resulting from or suggested by any work which I may do for Victaulic or at its request. I agree to assist Victaulic or its designees in every proper way, including execution of papers, giving lawful oaths and providing testimony, at Victaulic's expense, to secure, perfect, safeguard, and enforce any patents, copyrights, trademarks, trade secret rights or other legally cognizable rights (collectively, "IP Rights") in any and all countries. I hereby irrevocably grant to Victaulic power of attorney to execute and deliver any such documents on my behalf and to perform all other lawful acts as necessary to secure, perfect, safeguard, and enforce the IP Rights.

c) <u>Publicity</u>. I grant Victaulic the right to use and display my name, voice, likeness, appearance and image in any audio, visual, or audiovisual work, including, but not limited to photographs, pictures, images, motion pictures and video, websites, advertising or media of any form or format throughout the world, and at any time both during and after my period of employment with Victaulic, for any legitimate business purpose. I forever release Victaulic and its directors, officers, employees and agents from any and all claims or damages arising at any time from such rights to display and use.

5. <u>Security, Access to Equipment, Ownership and Return</u>. I understand that during the course of my employment, I may be provided with access to Victaulic's computer system/network (via Victaulic or personally-owned devices), facilities, and to computer equipment, communications or mobile devices provided by Victaulic. I agree to comply with all conditions, policies, and practices reasonably established by Victaulic for such access and the use of such equipment/devices, including for the protection of computer-maintained proprietary, confidential or trade secret information. Upon termination of my employment, I agree to return all property belonging to Victaulic, including, but not limited to, Victaulic-owned equipment/devices and any products, samples, tools, brochures, documents, notebooks, correspondence, memos, drawings or diagrams, or electronic storage media in any form which relates to Victaulic and/or its business, as well as any and all copies of any of the above-referenced materials.



*CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT:*
*GENERAL SALARIED EMPLOYEES*

6. <u>Restrictive Covenants</u>. In order to protect Victaulic's legitimate interests, including its confidential information, including trade secret information, customer relationships and goodwill, including goodwill acquired through my efforts while employed by Victaulic, and of the specialized training and confidential knowledge acquired by me during my employment concerning Victaulic's products, services, customers and sales strategies, I agree to the following:

a) <u>Loyalty</u>. During the time of my employment with Victaulic I acknowledge that I owe my complete work loyalty to Victaulic, and will use the entirety of my working time and my best efforts to carry out my responsibilities on behalf of Victaulic. During the time of my employment with Victaulic I will not become an employee, consultant or independent contractor of or for any business in competition with Victaulic. For purposes of this Agreement a business will be deemed to be in competition with Victaulic if it manufactures, sells or distributes any of the types of items, products, or services regularly offered for sale by Victaulic.

b) <u>Non-Competition</u>. For eighteen (18) months following the date of any termination of my employment with Victaulic (regardless of the reason for the termination and regardless of whether the termination is voluntary or involuntary on my part), I will not, within the United States:

    i.    become an employee, consultant or independent contractor of or for any business in competition with Victaulic;

    ii.    directly or indirectly engage in the sale or distribution of any item, product or service regularly offered for sale by Victaulic as an employee, consultant or independent contractor for or on behalf of any of the following direct competitor businesses: Tyco International Ltd.; Mueller Industries Inc.; Anvil International LLC; Star Pipe Products; Shurjoint Piping Products Inc.; Shanghai Vision Mechanical Joint Co. Ltd.; Shanghai Recomb Piping System Co. Ltd.; Jian Meide Casting Co. Ltd.; Modgal Metal Ltd.; Viking Corporation & Viking SA; Viega International; The Reliable Automatic Sprinkler Co., Inc.; IBP, Inc.; Piedmont Pacific Corporation and any and all of their respective parent companies and subsidiaries, and any and all of their respective affiliates and successors;

    iii.    should my employment at Victaulic be in sales, become an employee, consultant or independent contractor of or for any business in which I will be calling on the same customers in the same territory as I called upon during my employment at Victaulic.

c) <u>Non-Solicitation</u>. For eighteen (18) months following the date of termination of my employment with Victaulic (regardless of the reason for the termination and regardless of whether the termination is voluntary or involuntary on my part), I agree that I will not:

    i.    contact, service or solicit on behalf of any business in competition with Victaulic any of Victaulic's customers whose existence I learned of through my employment with Victaulic.



### *CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT: GENERAL SALARIED EMPLOYEES*

Customers shall include, but not be limited to, distributors, owners, architects, engineers, and contractors, regardless of whether or not they purchase Victaulic's products or services;

ii.    nor will I induce, or attempt to influence, any employee of Victaulic to terminate employment with Victaulic or to enter into any employment or other business relationship with any other person, firm or corporation.

d)    <u>Experience and Capabilities</u>. I further represent and warrant to Victaulic that my experience and capabilities are such that I may obtain gainful employment without breaching the terms and conditions of this Section 5 of the Agreement and that my obligations hereunder (and the enforcement thereof by injunction or otherwise) will not prevent me from earning a livelihood.

e)    <u>Tolling</u>. I agree that in the event of my breach or violation of any of the restrictions contained in this Section 5, the eighteen (18) month restriction periods specified will be tolled during the time of such breach or violation and shall not begin to run until such breach or violation has been fully and finally cured either voluntarily by me, by agreement, or by order of any court having competent jurisdiction.

7)    <u>Choice of Law, Venue</u>. This Agreement is deemed made in Easton, Pennsylvania, and I agree that all matters and disputes related directly or indirectly to this Agreement shall be governed, construed and determined in accordance with the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws provisions. I consent to jurisdiction in the Commonwealth of Pennsylvania, and venue, at Victaulic's option, in the United States District Court for the Eastern District of Pennsylvania, or in the Northampton County Court of Common Pleas. I waive any rights I may have to litigate in any venue other than the above courts, and covenant not to sue Victaulic in any court other than the above courts with respect to any dispute related to this Agreement.  I consent to the personal jurisdiction of both the Northampton County Court of Common Pleas and the United States District Court for the Eastern District of Pennsylvania.

8)    <u>Irreparable Injury</u>. Since a breach of the provisions of this Agreement would injure Victaulic irreparably in a way that could not be adequately compensated for by damages, I agree that Victaulic shall have the right, in addition to all available legal remedies, to obtain an injunction restraining any further violation; and no bond or other security shall be required in connection with the injunction.

9)    <u>Reformation and Severability</u>. To the extent that a court of competent jurisdiction determines that any of the terms of this Agreement are unreasonable or otherwise unenforceable, such court may revise, reform, and/or limit those terms such that they may be enforceable to the fullest extent permitted by law. In the event that such revision, reformation or limitations are insufficient to render such terms enforceable, and such terms are declared invalid by such a court, such a finding shall not affect the validity of any of the remaining portions of this Agreement, which shall remain in full force and effect.

10)    <u>Binding Effect and Assignability</u>. This Agreement, including my non-competition obligations set forth above, shall be binding upon me and my personal representatives, and shall be fully assignable by Victaulic, and shall inure to the benefit of its successors and assigns.



### CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT: GENERAL SALARIED EMPLOYEES

11) <u>Integration and Amendment</u>. This Agreement constitutes the entire understanding and agreement between myself and Victaulic with respect to the subject matter hereof, and no verbal or other statements, inducements or representations have been made or relied upon by either party.  This Agreement supersedes any prior agreement, oral or written, made by me with respect to the subject matter hereof.  This Agreement may be amended only by a writing executed by both Parties.

12) <u>Status</u>. I understand that my employment by Victaulic is "at will" and that I have not been promised continued employment for any period of time.  I understand and agree that this Agreement is not a contract of employment and nothing herein shall be construed as requiring me to remain in the employ of Victaulic, or for Victaulic to retain me in its employ.

THE FOREGOING IS ACCEPTED AND AGREED TO BY ME THIS _____ DAY OF __5/24/2023_____.

Signature: __Steven Wilson_____
            DocuSigned by:
            569D946EC1604AC...

Printed Name: __Steven Wilson_____


ACKNOWLEDGED:

Victaulic Company

By: __Carlos Valdes_____
     DocuSigned by:
     84AB64FC926D413...

Title: HR Director
Date: 5/24/2023

# EXHIBIT B



Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue, Suite 2600 | Miami, FL 33131 | tel 786.913.4900 | fax 786.913.4901

Nina T. Martinez
Tel: +1.786.913.4809
nina.martinez@pillsburylaw.com

June 17, 2026

***Via Email & Overnight Mail***

Mr. Steven Wilson
4220 NW 107 Avenue
Apt. 2202
Doral, Florida 33178
Telephone: (305) 812-4069
Email: steven.wilson1118@gmail.com

**Re: Immediate Request to Cease and Desist**

Dear Mr. Wilson:

This firm serves as outside counsel to Victaulic Company ("Victaulic" or the "Company"). Although the Company's investigation remains ongoing, it has learned that you have been hired by and intend to commence employment with Ferguson Enterprises, Inc. ("FEI") in the near term as a NUPI Specialist working in a geographic territory that overlaps with the territory in which you made sales calls during your employment by Victaulic. Your prospective employment by FEI plainly constitutes conduct that violates your continuing obligations to the Company.

Should you commence employment with FEI as proposed you will be in breach of the Confidentiality, Non-Disclosure, Non-Competition, Intellectual Property Agreement ("Non-Competition Agreement") executed in connection with your employment with the Company on May 24, 2023, which imposes, among other obligations, a covenant that you will not become an employee of any business in competition with Victaulic nor contact, service, or solicit on behalf of a Victaulic competitor. A copy of the Non-Competition Agreement is attached hereto as **Enclosure A** for your reference.

In relevant part, under Section 6 of the Non-Competition Agreement you agreed that, for a period of eighteen (18) months following the end of your employment with the Company for any reason, you will not "become an employee, consultant or independent contractor of or for ***any business in competition with Victaulic***." Non-Competition Agreement at § 6(b)(i) (emphasis added). Separately, this covenant restricts you from serving as an employee, consultant, or independent contractor of or for "any business in which [you] will be calling on the same customers in the same territory" called upon during your employment with Victaulic. *Id.* at § 6(b)(iii).

Steven Wilson
June 17, 2026
Page 2

In addition, the Non-Competition Agreement provides that you will not contact, service, or solicit, on behalf of any business in competition with Victaulic, any of Victaulic's customers whose existence [you] learned of through [your] employment with Victaulic." *Id.* at § 6(c)(i). Further, you agreed not to disclose or use any Confidential Information, as defined in the Non-Competition Agreement, acquired during the course of your employment. *Id.* at § 2.

Based on the information presently available to Victaulic, your anticipated employment will undoubtedly constitute a breach of these provisions.

In the first instance, as a distributor of pipes, valves, and fittings, FEI is unquestionably a business in competition with Victaulic under the terms of Section 6(b)(i) of the Non-Competition Agreement. Moreover, the NUPI product line that you stated you would be handling is a non-metallic piping system that directly competes with Victaulic.

Independently, as an employee engaged in sales at Victaulic, your proposed employment with FEI is also prohibited under the terms of Section 6(b)(iii) of the Non-Competition Agreement. Your service as a NUPI Specialist will undoubtedly result in your calling upon the same customers in the territory you called upon during your employment at Victaulic. *Id.* at § 6(b)(iii). The Non-Competition Agreement defines customers broadly to include, but not be limited to, "distributors, owners, architects, engineers, and contractors, regardless of whether or not they purchase Victaulic's products or services[.]" *Id.* at § 6(c)(i). It is exceedingly probable that your contemplated employment will call for your engagement and outreach to Victaulic's contractor base.

Finally, as you acknowledged in Section 6 of the Non-Competition Agreement, during the course of your employment you gained "specialized training and confidential knowledge" regarding Victaulic's products, services, customers, and sales strategies, your prospective employment with Victaulic's competitor necessarily contemplates the potential unlawful disclosure of the Company's strategic efforts around product pipelines, modification and improvement.

By this letter, we write to provide notice that Victaulic considers your proposed employment by FEI to be a direct violation of the agreement that you and Victaulic entered into, and demand that you immediately cease and desist all such unlawful conduct. Accordingly, we specifically demand that you immediately cease all plans to commence employment with FEI, rescind the offer of employment you received by FEI, and provide Victaulic with written confirmation of same, including your written confirmation that you will continue to abide by the terms of the parties' Non-Competition Agreement, **by no later than 5:00 p.m. EST, June 19, 2026**.

Be advised that Victaulic takes these matters very seriously. Your failure to timely, accurately, and completely respond to this demand will be used as further evidence of your illegal activity and your breach of the Non-Competition Agreement. Should this matter not be resolved Victaulic will take all necessary action to protect its contractual rights, including seeking injunctive relief, damages, and all other remedies available at law and in equity, without further notice to you.

110314994

Steven Wilson
June 17, 2026
Page 3

You are hereby placed on notice of your obligation to preserve all documents, data, and communications—including emails, text messages, and messaging platform communications—related to the matters addressed in this letter. Any destruction of such materials may constitute a further violation of your obligations, subject you to additional damages, and result in legal sanctions.

This letter is not intended as a full recitation of the facts or a complete review of applicable law. Nothing contained in or omitted from this letter is or shall be deemed to be a limitation, restriction, or waiver of any of Victaulic's rights or remedies, either at law or in equity, in connection with any of the matters raised herein, all of which are expressly reserved.

Please note that we are providing a copy of this letter to FEI, together with the enclosed notice letter, to ensure that it is aware of your continuing obligations to Victaulic and so that it can take necessary steps to ensure compliance with those obligations. A copy of our letter to FEI is enclosed for your reference as **Enclosure B**.

Going forward, please direct all correspondence relating to this matter, including any correspondence to the Company to me.

Sincerely,

Nina T. Martinez

cc:  Frank Cygler

Enclosures:

Encl. A – Non-Competition Agreement
Encl. B – Notice to FEI

110314994

# ENCLOSURE A



## *CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT: GENERAL SALARIED EMPLOYEES*

**This Confidentiality, Non-Disclosure, Non-Competition and Intellectual Property Assignment Agreement** ("Agreement") is entered into by and between Victaulic Company, a New Jersey Corporation, or any of its predecessors, successors, assigns, affiliates, or subsidiary companies ("Victaulic")  and ___Steven Wilson___, and is deemed effective as of the date of signature.  In consideration of "at will" employment by Victaulic and of other good and valuable consideration, and intending to be legally bound, I make the following representations and agree to the following terms:

1.  Representations by Employee:

    a)  Employment Not Restricted. I represent that I am not a party to any contract or involved in any form of legal action which prohibits my employment by Victaulic, including any employment agreement, confidentiality agreement, covenant not to compete, or any other restrictive agreement or covenant.  In the event that any former employer brings a lawsuit or other action against me for alleged breach of contract, I acknowledge that Victaulic is not responsible to indemnify or defend me in any such lawsuit or legal action.

    b)  Non-Disclosure of Trade Secrets. I further represent that I have not disclosed, nor has Victaulic requested me to disclose or use, any trade secrets of any former employer. I agree that I will not disclose or use any trade secrets of any former employer during my employment by Victaulic and that I will rely only upon my general knowledge and other non-proprietary information and knowledge to perform my job duties for Victaulic.

2.  Confidentiality of Information. I acknowledge Victaulic's legitimate business interest in maintaining the secret character of its confidential and proprietary information, including trade secrets (collectively, "Confidential Information"), that this information is of significant competitive and commercial value to Victaulic, and that Victaulic's disclosure of Confidential Information to me is in reliance on my obligations under this Agreement. I understand that I will have access to and/or will be provided such Confidential Information. I agree to keep such Confidential Information strictly confidential and that I will not, either during my employment with Victaulic or at any time thereafter, disclose to anyone, publish (including via social media) or use (except as authorized in the regular course of Victaulic 's business), any such Confidential Information acquired by me during my employment. Such Confidential Information includes any non-public, confidential or secret aspect of the business, which includes but is not limited to:

    (a)  trade secrets or confidential information relating to any of Victaulic's products or services (including Virtual Design and Construction services) or to any product or service that Victaulic may have under development at any time during my employment;

    (b)  engineering, technical and manufacturing information; drawings, designs, specifications, and tolerances; engineering procedures, instructions and methods; manufacturing methods, processes and techniques; any confidential or secret process, design, formula or invention; the yields, designs, efficiencies, and capabilities of Victaulic's facilities;



*CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT:*
*GENERAL SALARIED EMPLOYEES*

(c)  the status of Victaulic's research, testing, approvals and development activities, activities performed on a confidential basis with third parties, including whether those activities have proven successful or unsuccessful; information disclosed to Victaulic under obligation of confidentiality;

(d)  financial and business information; sales, profits, margins, marketing and advertising programs; business research, objectives, strategies and action or acquisition plans; new products, services and product development activities; the status of regulatory approvals;

(e)  sales information; sales goals, sales activity, products, services, pricing, customers, prospects; customer and vendor information; the names and addresses of customers and customer contacts,

(f)  terms of Victaulic's dealings with customers; discounts, pricing, costs and project information; identity of vendors and other sources;

(g)  confidential employee information such as salary, wage, medical and benefit information; employment levels for sites or organizations; employee lists and candidates.

I understand that the above list is not exhaustive, and also includes any such information developed by me during my employment with Victaulic.

3.  Exceptions to Confidentiality; Immunity.

a)  I understand that Section 2 does not in any way purport to restrict or impede my discussion of the terms and conditions of my employment with coworkers or union representatives, or of exercising rights protected by Section 7 of the National Labor Relations Act.

b)  I understand that neither Section 2 nor any other provision of this agreement prohibits me from disclosing Victaulic confidential information, including trade secrets, when that disclosure is: (A) made (i) in confidence to Federal, State, or local government official, either directly or indirectly,  or to an attorney; and (ii) solely for the purpose of reporting or investigating suspected violations of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. Provided that such disclosure is made in compliance with 18 U.S.C. 1833 (b), such disclosures may be made without criminal or civil liability under Federal or State trade secret laws. I understand that further information about this immunity may be found in Victaulic's Trade Secret Guidelines.

4.  Intellectual Property, Other Rights:

a)  Inventions and Assignment. I agree that the activities I engage in at Victaulic's direction during the course of my employment are for the sole benefit of Victaulic. I acknowledge and agree that during the course of my employment, and for a period of twelve (12) months immediately following the date of any termination of such employment (regardless of the reason for the termination and regardless of whether the termination is voluntary or involuntary on my part) I may invent, conceive, discover, develop or author useful and valuable intellectual property, including, but not limited to: inventions, ideas, techniques, developments, processes, compounds, formulations, software (including source and object code), textual and graphical reports and analyses,



*CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT:*
*GENERAL SALARIED EMPLOYEES*

photographs and other graphical or audiovisual works, and all other information in any data or media format whether or not patentable, trademarkable, copyrightable or otherwise legally protectable (collectively the "IP"). I agree that any such IP relating to or arising out of my work for Victaulic; within the existing or contemplated scope of Victaulic's business; or created while using Victaulic equipment, supplies, or information; whether made or conceived by me alone or in conjunction with others from the time of my hire date through the entire period of my employment as well as during the twelve (12) months immediately following the date of any termination of such employment, are the sole and exclusive property of Victaulic, and I hereby assign to Victaulic all my right, title and interest in and to such IP to Victaulic. To the extent that any such IP consists of copyrightable subject matter, I further agree that such IP is "work made for hire" as defined in the Copyright Act 17 U.S.C. §201(b) by reason of my employment at the time of authorship, that all copyrights in such IP are owned by Victaulic, and that Victaulic shall be considered the author for all purposes. I further expressly waive any other rights, including moral rights such as the rights of attribution and integrity, in or to such IP.

b) <u>Disclosure and Assistance</u>. I further agree to fully disclose any and all inventions made or conceived by me alone or in conjunction with others resulting from or suggested by any work which I may do for Victaulic or at its request. I agree to assist Victaulic or its designees in every proper way, including execution of papers, giving lawful oaths and providing testimony, at Victaulic's expense, to secure, perfect, safeguard, and enforce any patents, copyrights, trademarks, trade secret rights or other legally cognizable rights (collectively, "IP Rights") in any and all countries. I hereby irrevocably grant to Victaulic power of attorney to execute and deliver any such documents on my behalf and to perform all other lawful acts as necessary to secure, perfect, safeguard, and enforce the IP Rights.

c) <u>Publicity</u>. I grant Victaulic the right to use and display my name, voice, likeness, appearance and image in any audio, visual, or audiovisual work, including, but not limited to photographs, pictures, images, motion pictures and video, websites, advertising or media of any form or format throughout the world, and at any time both during and after my period of employment with Victaulic, for any legitimate business purpose. I forever release Victaulic and its directors, officers, employees and agents from any and all claims or damages arising at any time from such rights to display and use.

5. <u>Security, Access to Equipment, Ownership and Return</u>. I understand that during the course of my employment, I may be provided with access to Victaulic's computer system/network (via Victaulic or personally-owned devices), facilities, and to computer equipment, communications or mobile devices provided by Victaulic. I agree to comply with all conditions, policies, and practices reasonably established by Victaulic for such access and the use of such equipment/devices, including for the protection of computer-maintained proprietary, confidential or trade secret information. Upon termination of my employment, I agree to return all property belonging to Victaulic, including, but not limited to, Victaulic-owned equipment/devices and any products, samples, tools, brochures, documents, notebooks, correspondence, memos, drawings or diagrams, or electronic storage media in any form which relates to Victaulic and/or its business, as well as any and all copies of any of the above-referenced materials.



*CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT:*
*GENERAL SALARIED EMPLOYEES*

6.  <u>Restrictive Covenants</u>. In order to protect Victaulic's legitimate interests, including its confidential information, including trade secret information, customer relationships and goodwill, including goodwill acquired through my efforts while employed by Victaulic, and of the specialized training and confidential knowledge acquired by me during my employment concerning Victaulic's products, services, customers and sales strategies, I agree to the following:

a)  <u>Loyalty</u>. During the time of my employment with Victaulic I acknowledge that I owe my complete work loyalty to Victaulic, and will use the entirety of my working time and my best efforts to carry out my responsibilities on behalf of Victaulic. During the time of my employment with Victaulic I will not become an employee, consultant or independent contractor of or for any business in competition with Victaulic. For purposes of this Agreement a business will be deemed to be in competition with Victaulic if it manufactures, sells or distributes any of the types of items, products, or services regularly offered for sale by Victaulic.

b)  <u>Non-Competition</u>. For eighteen (18) months following the date of any termination of my employment with Victaulic (regardless of the reason for the termination and regardless of whether the termination is voluntary or involuntary on my part), I will not, within the United States:

    i.   become an employee, consultant or independent contractor of or for any business in competition with Victaulic;

    ii.  directly or indirectly engage in the sale or distribution of any item, product or service regularly offered for sale by Victaulic as an employee, consultant or independent contractor for or on behalf of any of the following direct competitor businesses: Tyco International Ltd.; Mueller Industries Inc.; Anvil International LLC; Star Pipe Products; Shurjoint Piping Products Inc.; Shanghai Vision Mechanical Joint Co. Ltd.; Shanghai Recomb Piping System Co. Ltd.; Jian Meide Casting Co. Ltd.; Modgal Metal Ltd.; Viking Corporation & Viking SA; Viega International; The Reliable Automatic Sprinkler Co., Inc.; IBP, Inc.; Piedmont Pacific Corporation and any and all of their respective parent companies and subsidiaries, and any and all of their respective affiliates and successors;

    iii. should my employment at Victaulic be in sales, become an employee, consultant or independent contractor of or for any business in which I will be calling on the same customers in the same territory as I called upon during my employment at Victaulic.

c)  <u>Non-Solicitation</u>. For eighteen (18) months following the date of termination of my employment with Victaulic (regardless of the reason for the termination and regardless of whether the termination is voluntary or involuntary on my part), I agree that I will not:

    i.   contact, service or solicit on behalf of any business in competition with Victaulic any of Victaulic's customers whose existence I learned of through my employment with Victaulic.



*CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT:*
*GENERAL SALARIED EMPLOYEES*

Customers shall include, but not be limited to, distributors, owners, architects, engineers, and contractors, regardless of whether or not they purchase Victaulic's products or services;

ii. nor will I induce, or attempt to influence, any employee of Victaulic to terminate employment with Victaulic or to enter into any employment or other business relationship with any other person, firm or corporation.

d) <u>Experience and Capabilities</u>. I further represent and warrant to Victaulic that my experience and capabilities are such that I may obtain gainful employment without breaching the terms and conditions of this Section 5 of the Agreement and that my obligations hereunder (and the enforcement thereof by injunction or otherwise) will not prevent me from earning a livelihood.

e) <u>Tolling</u>. I agree that in the event of my breach or violation of any of the restrictions contained in this Section 5, the eighteen (18) month restriction periods specified will be tolled during the time of such breach or violation and shall not begin to run until such breach or violation has been fully and finally cured either voluntarily by me, by agreement, or by order of any court having competent jurisdiction.

7) <u>Choice of Law, Venue</u>. This Agreement is deemed made in Easton, Pennsylvania, and I agree that all matters and disputes related directly or indirectly to this Agreement shall be governed, construed and determined in accordance with the laws of the Commonwealth of Pennsylvania, without regard to its conflict of laws provisions. I consent to jurisdiction in the Commonwealth of Pennsylvania, and venue, at Victaulic's option, in the United States District Court for the Eastern District of Pennsylvania, or in the Northampton County Court of Common Pleas. I waive any rights I may have to litigate in any venue other than the above courts, and covenant not to sue Victaulic in any court other than the above courts with respect to any dispute related to this Agreement. I consent to the personal jurisdiction of both the Northampton County Court of Common Pleas and the United States District Court for the Eastern District of Pennsylvania.

8) <u>Irreparable Injury</u>. Since a breach of the provisions of this Agreement would injure Victaulic irreparably in a way that could not be adequately compensated for by damages, I agree that Victaulic shall have the right, in addition to all available legal remedies, to obtain an injunction restraining any further violation; and no bond or other security shall be required in connection with the injunction.

9) <u>Reformation and Severability</u>. To the extent that a court of competent jurisdiction determines that any of the terms of this Agreement are unreasonable or otherwise unenforceable, such court may revise, reform, and/or limit those terms such that they may be enforceable to the fullest extent permitted by law. In the event that such revision, reformation or limitations are insufficient to render such terms enforceable, and such terms are declared invalid by such a court, such a finding shall not affect the validity of any of the remaining portions of this Agreement, which shall remain in full force and effect.

10) <u>Binding Effect and Assignability</u>. This Agreement, including my non-competition obligations set forth above, shall be binding upon me and my personal representatives, and shall be fully assignable by Victaulic, and shall inure to the benefit of its successors and assigns.



***CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION, INTELLECTUAL PROPERTY AGREEMENT:
GENERAL SALARIED EMPLOYEES***

11) <u>Integration and Amendment</u>. This Agreement constitutes the entire understanding and agreement between myself and Victaulic with respect to the subject matter hereof, and no verbal or other statements, inducements or representations have been made or relied upon by either party.  This Agreement supersedes any prior agreement, oral or written, made by me with respect to the subject matter hereof.  This Agreement may be amended only by a writing executed by both Parties.

12) <u>Status</u>. I understand that my employment by Victaulic is "at will" and that I have not been promised continued employment for any period of time.  I understand and agree that this Agreement is not a contract of employment and nothing herein shall be construed as requiring me to remain in the employ of Victaulic, or for Victaulic to retain me in its employ.

THE FOREGOING IS ACCEPTED AND AGREED TO BY ME THIS _____  DAY OF __5/24/2023_____.

Signature: _DocuSigned by:_ Steven Wilson _____
569D946EC1604AC...

Printed Name: Steven Wilson _____

ACKNOWLEDGED:

Victaulic Company

By: _DocuSigned by:_ Carlos Valdes _____
84AB64FC926D413...

Title: HR Director
Date: 5/24/2023

# ENCLOSURE B



Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue, Suite 2600 | Miami, FL 33131 | tel 786.913.4900 | fax 786.913.4901

Nina T. Martinez
Tel: +1.786.913.4809
nina.martinez@pillsburylaw.com

June 17, 2026

***Via Email & Overnight Mail***

Ian T. Graham
Chief Legal Officer and Corporate Secretary
Ferguson Enterprises, Inc.
751 Lakefront Commons
Newport News, VA 23606
ian.graham@ferguson.com

**Re:    Post-Employment Obligations of Steven Wilson to Victaulic Company**

Dear Mr. Graham:

This firm serves as outside counsel to Victaulic Company ("Victaulic" or the "Company") with regards to the above-referenced matter. I write to inform you that Mr. Wilson is bound by restrictive covenants arising from his employment with Victaulic, and that the Company has reason to believe that his prospective employment by Ferguson Enterprises, Inc. ("FEI") is in direct violation of those obligations.

In connection with his employment with Victaulic, Mr. Wilson executed a Confidentiality, Non-Disclosure, Non-Competition, Intellectual Property Agreement ("Non-Competition Agreement") on May 24, 2023 that, among other provisions, includes a non-competition covenant prohibiting Mr. Wilson's employment with any business in competition with Victaulic for a period of eighteen (18) months following the termination of his employment with the Company for any reason.

In relevant part, under Section 6 of the Non-Competition Agreement, Mr. Wilson agreed that for a period of eighteen (18) months following the end of his employment with the Company for any reason, he will not "become an employee, consultant or independent contractor of or for any business in competition with Victaulic." Non-Competition Agreement at § 6(b)(i). Separately, this covenant restricts Mr. Wilson from serving as an employee, consultant, or independent contractor of or for "any business in which [he] will be calling on the same customers in the same territory" called upon during his employment with Victaulic. *Id.* at § 6(b)(iii).

In addition, the Non-Competition Agreement provides that Mr. Wilson will not contact, service, or solicit, on behalf of any business in competition with Victaulic, any of Victaulic's

www.pillsburylaw.com

110294846

Ian T. Graham, Esq.
June 17, 2026
Page 2

customers whose existence Mr. Wilson learned of through his employment with Victaulic." *Id.* at § 6(c)(i). The Non-Competition Agreement defines customers broadly to include, but not be limited to, "distributors, owners, architects, engineers, and contractors, regardless of whether or not they purchase Victaulic's products or services[.]" *Id.* at § 6(c)(i). Finally, Mr. Wilson agreed not to disclose or use any Confidential Information belonging to Victaulic to third parties. *Id.* at § 2.

Mr. Wilson's employment with Victaulic will formally terminate on June 19, 2026. Victaulic deems Mr. Wilson's prospective employment by FEI as a NUPI Specialist or in virtually any other capacity during the eighteen (18) month period following his separation a direct violation of the parties' Non-Competition Agreement, as set forth in Sections 6(b)(i) and (iii). Further, Victaulic challenges any assertion that his prospective employment by FEI in, again, virtually any capacity could circumvent the inevitable risk of Mr. Wilson's breach of the Non-Competition Agreement's non-solicitation and confidentiality provisions, Sections 6(c)(i) and 2, respectively.

The purpose of this letter is to put FEI on notice of Mr. Wilson's contractual obligations to Victaulic and to request that FEI take immediate steps to ensure that no such violation is committed prior to Mr. Wilson's actual employment. To the extent FEI has directed, encouraged, or benefitted from any improper disclosure by Mr. Wilson or FEI moves forward with Mr. Wilson's employment, FEI may face liability for tortious interference with Victaulic's contractual rights.

Under the Non-Competition Agreement, Victaulic is entitled to injunctive relief, without bond and the tolling of the restricted period during the time of such breach until the violation has been fully and finally cured. Victaulic reserves all rights and remedies available to it at law and in equity against Mr. Wilson and any third party that aids, abets, or knowingly participates in the breach of his obligations.

FEI is hereby placed on notice of its obligation to preserve all documents and communications related to the recruitment or hiring of Mr. Wilson, including but not limited to emails, text messages, and any messaging platform communications involving Mr. Wilson.

We trust that FEI will take this matter seriously and act promptly to ensure compliance. Please direct any correspondence regarding this matter to my attention.

Sincerely,

Nina T. Martinez

cc:    Jordan Stanaway
       Frank Cygler

Enclosure: Cease and Desist Letter to Steven Wilson, dated June 17, 2026

110294846

# EXHIBIT C

# McGuireWoods

McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102-4215
Phone: 703.712.5000
Fax: 703.712.5050
www.mcguirewoods.com

David L. Greenspan
Direct: 703.712.5096
dgreenspan@mcguirewoods.com
Fax: 703.712.5214

June 23, 2026

**VIA ELECTRONIC MAIL**
Nina T. Martinez, Esq.
Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue, Suite 2600
Miami, Florida 33131
nina.martinez@pillsburylaw.com

Re:     **Victaulic Company ads. Steven Wilson**

Dear Ms. Martinez:

This law firm and the undersigned represent Ferguson Enterprises, LLC ("Ferguson" or the "Company"). I write to acknowledge receipt of your June 17, 2026 correspondence to Ian Graham regarding Steven Wilson ("Mr. Wilson"). Please direct all further communications regarding this matter to my direct attention.

Ferguson acknowledges Victaulic's concern that Mr. Wilson's contemplated employment as a NUPI Specialist would violate Section 6 of the Agreement of the Confidentiality, Non-Disclosure, Non-Competition, Intellectual Property Agreement (the "Agreement") that Mr. Wilson executed in connection with his prior employment at Victaulic Company ("Victaulic"). Ferguson takes these matters seriously and is committed to ensuring compliance with all lawful post-employment obligations.

Ferguson understands Mr. Wilson's post-employment obligations to Victaulic, including the restrictive covenants referenced in your correspondence, and intends to abide by any applicable obligations that are enforceable under Pennsylvania law. Ferguson notes, however, that under Pennsylvania law, a covenant not to compete must be reasonably limited in duration, geography and scope to be enforceable. The non-compete in Section 6(b)(i) covers the entire United States and is no way tailored to Mr. Wilson's prior role with Victaulic. Rather, it bars him from working anywhere in the United States (when his territory at Victaulic was limited to South Florida) for the next eighteen months, in any capacity, for any business "in competition" with Victaulic. In sum, Ferguson does not understand the non-compete to be enforceable under applicable law. Notwithstanding the foregoing, Ferguson does not seek to employ Mr. Wilson in a competitive capacity and offers the following to alleviate any legitimate concerns your client may have.

Atlanta | Austin | Baltimore | Charlotte | Charlottesville | Chicago | Dallas | Houston | Jacksonville | London | Los Angeles - Century City | New York | Norfolk | Pittsburgh | Raleigh | Richmond | San Francisco | Seattle | Tysons | Washington, D.C.

Nina T. Martinez, Esq.
June 23, 2026
Page 2 of 2

First, contrary to your allegation, Mr. Wilson will not work for Ferguson as a NUPI Specialist. Instead, his role with Ferguson will be PVF Project Manager—a position that is not a sales role. Mr. Wilson will be working on projects for Ferguson's existing customers.

Second, in the first six to eight months of his employment, Mr. Wilson will be training at one of Ferguson's warehouses, learning new processes, loading materials, and working at the counter. Because this new role does not involve sales activities, Section 6(b)(iii) of the Agreement, which by its express terms applies only "should [his] employment at Victaulic be in sales," does not restrict Mr. Wilson's employment with Ferguson in a non-sales capacity.[1]

Third, during his restricted period (i.e., eighteen months), Mr. Wilson will not service South Florida and will instead service other geographic markets for Ferguson. Stated otherwise, Mr. Wilson will not be "calling on the same customers in the same territory" as he called upon during his employment at Victaulic.

Fourth, regardless of territory, Mr. Wilson will not solicit any Victaulic customers with whom he worked while employed by Victaulic.

Fifth, Ferguson has instructed Mr. Wilson that he is prohibited from using any of Victaulic's confidential and proprietary information during his employment with Ferguson. Ferguson does not want any such information and is not aware that Mr. Wilson has retained any such information. Should you have any facts to the contrary, please let me know immediately.

Sixth, in response to your preservation request, Ferguson will preserve relevant materials in the ordinary course. I trust your client will implement reciprocal preservation protocols.

Ferguson remains available to confer promptly if you believe additional information or coordination would help address your client's legitimate concerns efficiently and cooperatively. Nothing in this letter waives, limits, or prejudices any rights, defenses, or positions of Ferguson or Mr. Wilson, all of which are expressly reserved.

Sincerely,

David L. Greenspan

cc:     Ian T. Graham, Esq.
        Jacqueline Kinni, Esq

---

[1]     I also note that Ferguson is not listed as a competitor on the enumerated list of competitors in Section 6(b)(ii) of the Agreement.

# EXHIBIT D



Pillsbury Winthrop Shaw Pittman LLP

600 Brickell Avenue, Suite 2600  |  Miami, FL 33131  |  tel 786.913.4900  |  fax 786.913.4901


Nina T. Martinez
Tel: +1.786.913.4809
nina.martinez@pillsburylaw.com


July 1, 2026


<u>**Via Email**</u>

David L. Greenspan, Esq.
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102-4215
dgreenspan@mcguirewoods.com


**Re:    Steven Wilson's Prospective Employment at Ferguson Enterprises, LLC**

Dear Mr. Greenspan:

This letter is provided in response to your June 23, 2026 correspondence on behalf of Ferguson Enterprises, LLC ("Ferguson"). While we appreciate Ferguson's stated commitment to compliance, the measures described in your letter do not cure, and in several respects, ***confirm*** Victaulic Company's ("Victaulic") concern that Ferguson's employment of Mr. Wilson threatens imminent violation of the Confidentiality, Non-Disclosure, Non-Competition, Intellectual Property Agreement executed by Mr. Wilson on May 24, 2023 (the "Agreement"). We address each point in your letter below.

As an initial matter, the scope of your representation is unclear. We would appreciate it if you would confirm whether you are also representing Mr. Wilson, as we have an obligation to Mr. Wilson to ensure that he is aware of Victaulic's position[1] and do not want to correspond with him directly if your firm is indeed representing him.

### A.  The Restriction Set Forth in Section 6(b)(i) of the Agreement is Enforceable.

First, Sections 6(b)(i), (ii), and (iii) are independent restrictions, each standing as a separate ground for enforcement. Your observation that Ferguson is not listed as a competitor on the

---

[1] Relatedly, and apart from our obligations, we also want to ensure that Mr. Wilson is aware of Ferguson's position.

David L. Greenspan, Esq.
July 1, 2026
Page 2

enumerated list of competitors in Section 6(b)(ii) of the Agreement is immaterial.[2] The enumerated competitor list in Section 6(b)(ii) defines the scope of that particular subsection and does not limit or qualify the broader prohibition in Section 6(b)(i), which covers any business that "manufactures, sells or distributes any of the types of items, products, or services regularly offered for sale by Victaulic," as defined in Section 6(a).

Critically, the re-designation of Mr. Wilson's role as a "PVF Project Manager" positions Mr. Wilson *more squarely* in violation of Section 6(b)(i). "PVF" is an industry abbreviation for pipes, valves, and fittings, the very product categories in which Victaulic competes and in which Ferguson is a distributor. A role denominated as "PVF Project Manager" is, on its face, *more* directly competitive with Victaulic's business than the originally contemplated NUPI Specialist position. In any event, the title change appears to be a cosmetic rather than substantive solution. While your letter acknowledges that Mr. Wilson "will be working on projects for Ferguson's existing customers," anything in the PVF space, regardless of his title, results in Mr. Wilson's direct violation of Section 6(b)(i) of the Agreement.

Your assertion that the covenant in Section 6(b)(i) is unenforceable due to its breadth does not excuse Mr. Wilson's complete and unilateral noncompliance. In the first instance, Pennsylvania courts routinely enforce employee non-competition agreements where, as is the case here, the covenant is incidental to employment, supported by adequate consideration, reasonable in duration, and protective of legitimate employer interests including trade secrets, confidential information, customer goodwill, and specialized training. *See, e.g.*, *Rullex Co., LLC v. Tel-Stream, Inc.*, 232 A.3d 620, 624 (2020). Should Victaulic be required to assert its legal rights, it will vigorously defend the reasonableness of the restriction's geographic scope given the nationwide reach of its customer relationships, including with regional and national accounts that can easily be serviced from outside of a particular sales region using the customer relationships formed within a given sales region, and the confidential, strategic information entrusted to Mr. Wilson. Moreover, Pennsylvania law expressly permits courts to reform or "blue pencil" any term found to be overbroad rather than voiding the covenant entirely. *See Sidco Paper Co. v. Aaron*, 351 A.2d 250, 254-55 (Pa. 1976). The Agreement itself anticipates this remedy: Section 9 provides that a court "may revise, reform, and/or limit those terms such that they may be enforceable to the fullest extent permitted by law." Agreement at § 9.

## B. The Restrictions Set Forth in Section 6(b)(iii) and 6(c) of the Agreement are Enforceable.

The claim that Section 6(b)(iii) of the Agreement is inapplicable because Mr. Wilson's new role at Ferguson is purportedly "not a sales role" misstates the clear language of the Agreement. Section 6(b)(iii) provides that, "should [Mr. Wilson's] employment *at Victaulic* be in sales," Mr. Wilson will not "become an employee, consultant or independent contractor of or for any business in which [he] will be calling on the same customers in the same territory as [he] called upon during my employment at Victaulic." The condition triggering the application of Section 6(b)(iii) is Mr. Wilson's *prior role at Victaulic*, not Ferguson's self-serving description of his role.

---

[2] Notably, my June 17, 2026 correspondence to Ferguson does not raise Section 6(b)(ii) as a basis of Victaulic's prospective claims against Mr. Wilson for breach of the Agreement.

110294846

David L. Greenspan, Esq.
July 1, 2026
Page 3

In any event, Ferguson's representation that Mr. Wilson will spend the first six to eight months "training at one of Ferguson's warehouses, learning new processes, loading materials, and working at the counter" does not void the employment applicability of the Agreement's restrictions under Section 6(b)(iii). Ferguson's placement of Mr. Wilson in a nominally non-customer-facing role at the outset of his employment appears calculated to run out the most sensitive portion of the restriction period. Simply because he does not commence his employment at Ferguson "calling on the same customers in the same territory" does not suggest he will not eventually engage in such conduct during the course of the restricted period. While your letter is notably silent on what Mr. Wilson's role will be *after* this initial training period, the obvious inference is that he will transition into a sales or customer-facing capacity within the PVF line. This, of course, would compound the ongoing violation of Section 6(b)(i) with additional violations of Sections 6(b)(iii) and 6(c)(i).

Ferguson's assurances that Mr. Wilson will not service South Florida during the restricted period and will not call on the "same customers in the same territory" do not resolve Victaulic's concerns. The non-solicitation provision in Section 6(c)(i) prohibits Mr. Wilson from contacting, servicing, or soliciting *any* Victaulic customer "whose existence [he] learned of through [his] employment with Victaulic" regardless of whether or not they purchase Victaulic's products or services. Further, "customers" is broadly defined in the Agreement to include "distributors, owners, architects, engineers, and contractors." Given that Ferguson itself is a distributor in the PVF space and serves many of the same contractors, engineers, and project owners as Victaulic, the risk that Mr. Wilson will encounter and call upon the same customers is not merely theoretical, it is inherent in the role as described. In fact, Ferguson's promise that Mr. Wilson will not violate the non-solicitation provision is demonstrative of the fundamental problem with his employment by Ferguson in any capacity. Namely, in order to comply with the non-solicitation restriction, Ferguson must know *which* customers are off-limits. The only way to identify those customers (as defined in the Agreement) is for Mr. Wilson to disclose or utilize his knowledge of Victaulic's customer relationships, which itself constitutes use of Confidential Information in violation of Section 2 of the Agreement. Ferguson cannot credibly assure compliance with the non-solicitation provision without implicating the very confidentiality obligations it purports to respect.

*        *        *

In short, Victaulic reiterates its position that Mr. Wilson's employment by Ferguson, irrespective of title or initial duties, constitutes a violation of the Agreement's non-competition and non-solicitation provisions and poses an unacceptable and imminent risk of violation of the Agreement. Given Ferguson's familiarity with Victaulic's business and the diversity of business lines in which Ferguson operates, Victaulic had some hopes that Ferguson would have responded with a robust and more fulsome description of the proposed employment which would alleviate the genuine competitive concerns that Victaulic has and which Ferguson (especially given Ferguson's recent and close relationship with Victaulic) clearly understands. Victaulic will take all necessary and appropriate legal action to enforce its Agreement with Mr. Wilson. Notwithstanding the foregoing, Victaulic is willing to confer promptly in an effort to resolve this matter short of litigation.

110294846

David L. Greenspan, Esq.
July 1, 2026
Page 4

       This letter is not intended as a full statement of the facts or a complete review of applicable law. Nothing contained in or omitted from this letter shall be deemed a waiver, limitation, or restriction of any of Victaulic's rights or remedies, at law or in equity, all of which are expressly reserved.

                                  Sincerely,

                                    Nina T. Martinez

cc:     Frank Cygler

110294846

# EXHIBIT E

| | |
|---|---|
| **From:** | Greenspan, David L. <dgreenspan@McGuireWoods.com> |
| **Sent:** | Friday, July 10, 2026 11:38 AM |
| **To:** | Martinez, Nina T. |
| **Subject:** | RE: Victaulic Company ads. Steven Wilson (Ferguson Enterprises) |

Nina,

In furtherance of our conversation last week, I write to share additional information regarding Mr. Wilson's anticipated job with Ferguson.

For the remainder of 2026, Mr. Wilson will participate in a training program where he will learn Ferguson's business. He will not be managing projects, and to the extent his training work involves sales, he will be sequestered from supporting quotes or having any contacts with customers in his former sales territory.

Starting on or about January 1, 2027, he will start work in the role of Commercial/PVF Project Manager. In this role, he will manage large, complex Pipe, Valves & Fittings projects. Here is the job description in more detail:

**Job Description**   This position will manage large, complex Pipe, Valves & Fittings projects from start to finish.
**Primary Responsibilities**

- Manage all aspects of a project, from start to finish, so that it is completed on time and within budget
- Maintain project pricing
- Act as the point of contact for the customers and for the project overall providing best in class customer service
- Recommend products and services that fit well with clients' business needs
- Identify, develop, and gather the resources to complete the project
- Establish and maintain effective sales relationships with major accounts/customers
- Monitor progress and performance against the project plan; resolve operational problems and minimize delays
- Work directly with partners and clients to determine project scope, specifications, requirements, and perform calculations
- Conduct project meetings and prepare regular reports to communicate the status of the project within and beyond the project team
- Responsible for procuring and ensuring the timely delivery of supplies, materials, and equipment
- Ensure accurate billing of the project

He will support the SE Region, which includes FL, GA, NC, SC. However, he will be sequestered from S-FLA through at least December 2027. He will also be sequestered from any former Victaulic customers that he serviced/called on during his tenure with your client regardless of territorial constraints.

I once again note that Ferguson is not interested in Victaulic's confidential or proprietary information. Mr. Wilson has been instructed not to retain or bring any such information with him, and should your client have any reason to believe that he remains in possession, custody or control of such information, I invite you to share your concern immediately so that it can be adequately addressed.

I hope that this voluntary disclosure obviates the need for additional discussion regarding Mr. Wilson's employment with Ferguson. That being said, I remain available to speak with you to address any additional concerns your client may have.

Regards,
David


**David L. Greenspan** [x]
Partner
McGuireWoods LLP

1

T:  +1 703 712 5096 | M: +1 703 864 3339
dgreenspan@mcguirewoods.com

---

**From:** Martinez, Nina T. <nina.martinez@pillsburylaw.com>
**Sent:** Wednesday, July 8, 2026 2:57 PM
**To:** Greenspan, David L. <dgreenspan@McGuireWoods.com>
**Subject:** RE: Victaulic Company ads. Steven Wilson (Ferguson Enterprises)

**\*\*EXTERNAL EMAIL; use caution with links and attachments\*\***

David,

I hope you had a restful holiday weekend. Have you had an opportunity to connect with your client about the job description? As I mentioned, having a better sense of Mr. Wilson's role following the training period will be a helpful starting point for any discussion going forward.

Nina

**Nina Martinez** | Counsel
Pillsbury Winthrop Shaw Pittman LLP
600 Brickell Avenue Suite 2600 | Miami, FL 33131
t +1.786.913.4809 | m +1.305.600.6266
nina.martinez@pillsburylaw.com | website bio

AUSTIN   BEIJING   BOSTON   DOHA   HONG KONG   HOUSTON   LONDON
LOS ANGELES   MIAMI   NASHVILLE   NEW YORK   NORTHERN VIRGINIA
PALM BEACH   RIYADH   SACRAMENTO   SAN DIEGO   SAN FRANCISCO
SHANGHAI   SILICON VALLEY   TAIPEI   TOKYO   WASHINGTON, DC



---

**From:** Martinez, Nina T.
**Sent:** Wednesday, July 1, 2026 10:20 AM
**To:** 'Greenspan, David L.' <dgreenspan@McGuireWoods.com>
**Subject:** RE: Victaulic Company ads. Steven Wilson (Ferguson Enterprises)

David, thanks and confirming receipt. Please see our further response attached.

Nina

---

**From:** Greenspan, David L. <dgreenspan@McGuireWoods.com>
**Sent:** Friday, June 26, 2026 2:22 PM
**To:** Martinez, Nina T. <nina.martinez@pillsburylaw.com>
**Subject:** FW: Victaulic Company ads. Steven Wilson (Ferguson Enterprises)

Nina:

I represent Ferguson with respect to your letter regarding Steven Wilson.  I sent you an email on Tuesday (see below and attached).  It was incorrectly addressed to Pillsbury.com as opposed to pillsburylaw.com.  I have corrected the address error and would ask that you please confirm receipt at your earliest opportunity.

Regards,
David

2

**David L. Greenspan** ☐

Partner
McGuireWoods LLP
T:  +1 703 712 5096 | M: +1 703 864 3339
dgreenspan@mcguirewoods.com

---

**From:** Greenspan, David L.
**Sent:** Tuesday, June 23, 2026 1:17 PM
**To:** 'nina.martinez@pillsbury.com' <nina.martinez@pillsbury.com>
**Subject:** Victaulic Company ads. Steven Wilson (Ferguson Enterprises)

Dear Ms. Martinez:

Please see attached correspondence regarding the above-referenced matter.

Regards,
David

**David L. Greenspan** ☐

Partner
McGuireWoods LLP
1750 Tysons Boulevard
Suite 1800
Tysons, VA 22102-4215
T:  +1 703 712 5096
M: +1 703 864 3339
F:  +1 703 712 5214
dgreenspan@mcguirewoods.com
Bio | VCard | www.mcguirewoods.com

3

# EXHIBIT F



Pillsbury Winthrop Shaw Pittman LLP

600 Brickell Avenue, Suite 2600 | Miami, FL 33131 | tel 786.913.4900 | fax 786.913.4901

Nina T. Martinez
Tel: +1.786.913.4809
nina.martinez@pillsburylaw.com

July 14, 2026

<u>*Via Email*</u>

David L. Greenspan, Esq.
McGuireWoods LLP
1750 Tysons Boulevard, Suite 1800
Tysons, VA 22102-4215
dgreenspan@mcguirewoods.com

**Re:    Steven Wilson's Prospective Employment at Ferguson Enterprises, LLC**

Dear Mr. Greenspan:

Thank you for providing the additional information regarding Mr. Wilson's anticipated role at Ferguson. We have reviewed the job description and related representations in your recent correspondence carefully. Unfortunately, rather than alleviating Victaulic's concerns, the information you have shared *materially heightens them*.[1] The role Ferguson describes is, by its own terms, a competitive sales and customer-relationship position in products that directly compete with Victaulic's offerings.

The role described is functionally what Victaulic's own sales force does: life-cycle pursuit and management of complex piping projects to drive value over competitors. Regardless of the "Project Manager" label, the position is substantively a competitive sales role. Among other responsibilities, the description expressly requires Mr. Wilson to "[e]stablish and maintain effective sales relationships with major accounts/customers," [a]ct as the point of contact for the customers and for the project overall providing best in class customer service," "[r]ecommend products and services that fit well with clients' business needs," and [m]aintain project pricing." These are sales activities by any reasonable definition.

Your representations that Mr. Wilson will support the "SE Region (FL, GA, NC, SC)" and will be "sequestered from S-FLA through at least December 2027" and from "any former Victaulic

---

[1] Notably, the description Ferguson has provided appears to be an excerpt, not a complete position description.

www.pillsburylaw.com

David L. Greenspan, Esq.
July 14, 2026
Page 2

customers he serviced/called on during his tenure at Victaulic regardless of territorial constraints" are similarly disconcerting. Setting aside the outright prohibition articulated in Section 6(b)(i), Ferguson's interpretation of Mr. Wilson's territory is arbitrarily narrow, and its approach ignores the realities of Mr. Wilson's customer relationships and the PVF industry. Namely, while employed by Victaulic, Mr. Wilson developed contacts with regional and national customers, suppliers, vendors, engineers, and contractors whose operations and influence span well beyond South Florida. For example, Mr. Wilson called on engineering offices in South Florida that have national reach and influence over product specification decisions. Engineering firms specify piping systems for projects across the country. If Mr. Wilson is recommending alternative piping methods, such as PPR or stainless-steel press systems, as substitutes for grooved mechanical piping (Victaulic's core product offering), the competitive harm extends far beyond any geographic territory Ferguson purports to define. More concerningly, if Mr. Wilson is "maintain[ing] project pricing" as Ferguson describes, his knowledge of Victaulic's project pricing strategies will enable him to directly harm Victaulic in the recommendation and provision of alternative products as well as directly competitive grooved products. This is *precisely* the type of harm that restrictive covenants are intended to prevent. Merely carving South Florida out of the larger region for which he would have responsibility cannot ameliorate this harm.

Moreover, South Florida contractors routinely perform work throughout the state of Florida and beyond. And, practically speaking, Mr. Wilson's ostensibly "local" contacts will undoubtedly be leveraged in pursuit of business opportunities in virtually any territory Ferguson assigns him but especially in the Southeast region. Finally, Ferguson's promise to "sequester" Mr. Wilson from former Victaulic customers he "serviced/called on" does not account for the breadth of the Agreement's definition of "customers" under Section 6(c)(i), which includes distributors, owners, architects, engineers, and contractors, regardless of whether or not they purchase Victaulic's products or services. The universe of restricted customers extends far beyond those Mr. Wilson personally serviced, it encompasses all Victaulic customers "whose existence [he] learned of through [his] employment."

In short, Victaulic views this role as clearly in violation of the noncompete agreement, and so calculated as to implicate, rather than avoid, Victaulic's concerns that my client hardly sees this as a good faith attempt to avoid a dispute. Despite the foregoing, Victaulic's position is not that Mr. Wilson may never work for Ferguson under any circumstances, and indeed Victaulic continues to believe there may be a path forward if Mr. Wilson is employed in a capacity that truly does not implicate the legitimate interests for which Victaulic maintains restrictive covenants. The current contemplated role does not resolve these concerns. Ferguson would need to craft a different role for Mr. Wilson—one that does not involve the national and interconnected network of contacts, customer relationships, and confidential knowledge that Mr. Wilson cultivated while at Victaulic, and which are protected in part by the restrictive covenants he has with Victaulic. Such a role could conceivably be a non-sales position or even a sales role, provided it does not involve Victaulic-competitive products (including pipes, valves, fittings, couplings, and mechanical joining systems), does not involve Victaulic customers (as defined in Section 6(c)(i) of the Agreement), and does not leverage the confidential commercial information Mr. Wilson acquired at Victaulic regarding pricing, project pipelines, customer terms, and competitive strategies. Victaulic does not intend to prescribe what that role should be but remains hopeful that Ferguson can identify a role for Mr.

110294846

David L. Greenspan, Esq.
July 14, 2026
Page 3

Wilson during the restricted period that does not implicate Victaulic's legitimate interests. We are prepared to evaluate any revised proposal in good faith.

Given Victaulic and Ferguson's long historical relationship, my client had hoped that Ferguson had intended a path for Mr. Wilson that avoided implication of his restrictive covenants or that sought from Victaulic only a reasonable compromise. To be clear, however, if Ferguson is unwilling to employ Mr. Wilson in a role that does not directly offend the restrictive covenants he agreed to, Victaulic will have to consider pursuit all available legal remedies, including seeking immediate injunctive relief.

Lastly, as previously requested, please confirm whether you are or are not also representing Mr. Wilson, as we have an obligation to Mr. Wilson to ensure that he is aware of Victaulic's position, and it is both appropriate and necessary for Victaulic to have clarity on that point from your firm.

Sincerely,

Nina T. Martinez

cc:      Frank Cygler

110294846